IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

Mehrdad Shayefar; Gina
Shayefar;

     Plaintiffs,

  vs.

Von-Alan Hinano Kaleleiki;
Sarah-Therece K. Kaleleiki;
John Does 1-50; Jane Does 1-
50; Doe Corporations 1-50;
Doe Partnerships 1-50; Doe
Entities 1-50; Doe
Governmental Units 1-50;

     Defendants.

Civ. No. 14-00322 HG-KSC

**ORDER GRANTING, IN PART, PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS II, IV AND V OF THE COMPLAINT (ECF NO. 52)**

Plaintiffs Mehrdad and Gina Shayefar are a husband and wife who assert that they have clear title to a 7.846 acre lot of undeveloped land located on the island of Maui.  On January 10, 2008, Plaintiffs recorded a warranty deed with the State of Hawaii Bureau of Conveyances for the land.  Plaintiffs have submitted evidence tracing chain of title to the land from the original land award issued to Konohiki Kaleleiki through to them.

1

Defendants Von-Alan Hinano and Sarah-Therece K. Kaleleiki are brother and sister who claim they have title to the same 7.846 acre lot based on ancestral inheritance.  Defendants argue that Plaintiffs' evidence for chain of title is flawed and is based on a probate proceeding for "Kaleleike" and not "Kaleleiki."

Plaintiffs have filed a Motion for Partial Summary Judgment based on their evidence of chain of title. Plaintiffs seek summary judgment on three of the seven claims in their Complaint.  Plaintiffs seek summary judgment on Count II for quiet title, on Count IV for ejectment, and Count V for remedies including a permanent injunction.

Plaintiffs' Motion for Partial Summary Judgment on Counts II, IV, and V of the Complaint is **GRANTED, IN PART**.

## PROCEDURAL HISTORY

On July 14, 2014, Plaintiffs Mehrdad Shayefar and Gina Shayefar filed a Complaint.  (ECF No. 1).

On August 14, 2014, Defendants Samuel Houpo Kaleleiki, Jr., Von-Alan Hinano Kaleleiki, and Sarah-Therece K. Kaleleiki, proceeding pro se, filed DEFENDANT'S MOTION TO DISMISS THE PLAINTIFFS COMPLAINT WITH PREJUDICE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULE 12(b).  (ECF No. 15).

On October 6, 2014, a hearing was held on the Defendants' Motion to Dismiss.  (ECF No. 22).

On October 7, 2014, the Court issued an ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULE 12(b). (ECF No. 23).  In the Order, the Court ruled that it had subject matter jurisdiction over Plaintiffs' Complaint, that venue was proper, and that Plaintiffs had stated claims upon which relief could be granted.  (Id.)

On January 29, 2015, Plaintiffs filed a MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS II, IV AND V OF THE COMPLAINT.  (ECF No. 29).

On the same date, Plaintiffs filed their SEPARATE CONCISE STATEMENT OF FACTS FOR MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS II, IV AND V OF THE COMPLAINT.  (ECF No. 30).

On June 29, 2015, a hearing was held on Plaintiffs' Motion for Partial Summary Judgment.  (ECF No. 42).

On July 9, 2015, Plaintiffs filed a SUGGESTION OF DEATH UPON THE RECORD AS TO SAMUEL HOUPO KALELEIKI, JR.  (ECF No. 44).

On July 13, 2015, the Court issued an ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS II, IV AND V OF THE COMPLAINT.  (ECF No. 45).

3

On August 25, 2015, the Court held a status conference with the Parties. (ECF No. 51). The Court granted Plaintiffs' oral motion to continue the dispositive motions deadline to allow them to file an amended Motion for Partial Summary Judgment. (<u>Id.</u>)

On September 10, 2015, Plaintiffs filed PLAINTIFFS MEHRDAD SHAYEFAR AND GINA SHAYEFAR'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS II, IV AND V OF THE COMPLAINT. (ECF No. 52).

On the same date, Plaintiffs filed their SEPARATE CONCISE STATEMENT OF FACTS FOR MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS II, IV AND V OF THE COMPLAINT. (ECF No. 53).

On September 28, 2015, Defendants filed a request for additional time to file their Opposition to Plaintiffs' Motion for Partial Summary Judgment. (ECF No. 57).

On September 30, 2015, the Court issued a Minute Order granting Defendants' request for additional time. (ECF No. 58). The Court also requested that Plaintiffs file an Amended Affidavit of Colleen H. Uahinui that was attached to their Concise Statement Facts to clarify issues raised in the affidavit. (<u>Id.</u>)

On October 15, 2015, Plaintiffs filed a SUPPLEMENTAL MEMORANDUM in support of their Motion for Partial Summary

Judgment along with an Amended Affidavit of Ms. Uahinui.  (ECF No. 59).

On October 29, 2015, Defendants filed DEFENDANTS' PRO SE CONCISE STATEMENT OF FACTS IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT.  (ECF No. 60).

On November 12, 2015, Plaintiffs filed PLAINTIFFS MEHRDAD SHAYEFAR AND GINA SHAYEFAR'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS II, IV AND V OF THE COMPLAINT.  (ECF No. 62).

Also on November 12, 2015, the Court issued a Minute Order dismissing Samuel Houpo Kaleleiki, Jr. as a defendant pursuant to Fed. R. Civ. P. 25(a) based on the filing of the Suggestion of His Death Upon the Record.  (ECF No. 63).

On November 25, 2015, a hearing was held on the Plaintiffs' Motion for Partial Summary Judgment.  (ECF No. 52).

**BACKGROUND**

**Historical Background**

In 1840, the first constitution of the Hawaiian Kingdom was enacted by King Kamehameha III.  Jon J. Chinen, The Great Mahele: Hawaii's Land Division at 7 (1958).  Under the Constitution of 1840, all land "belonged" to the king but it

was not personal property.  Omerod v. Heirs of Kaheananui, 172 P.3d 983, 990 (Haw. 2007).  Rather, the land "belonged to the chiefs and the people, and the King, as the head of the chiefs and the people, managed the land."  Id.

In 1845, the Board of Commissioners to Quiet Land Titles ("Land Commission") was established to facilitate the transition from the traditional Hawaiian landholding scheme to a more Western system.  Id. at 991.  The Land Commission's initial purpose was "to investigate and settle all land claims of private individuals, whether native or foreign."  Makila Land Co., LLC v. Kapu, 156 P.3d 482, 484 (Haw. App. 2006).

The Land Commission's work led to the Great Mahele of 1848, the division of lands between the king and the chiefs or konohiki.  Makila Land Co., LLC, 156 P.3d at 484.  The term "konohiki" originally referred to an agent or a person in charge of a tract of land on behalf of the king or a chief; later it came to refer directly to the chief.  John W. Reilly, The Language of Real Estate in Hawaii, at 182 (1975).

The individual divisions, or maheles, were all recorded in the Mahele Book and the land was divided between the king and the chiefs or konohikis.  Chinen, The Great Mahele at 20.  "The Mahele itself did not convey any title to land.  The high chiefs and the lesser konohikis who participated in The Mahele

6

who were named in the Mahele Book were required to present their claims before the Land Commission and to receive awards for the lands quitclaimed to them by Kamehameha III." Chinen, The Great Mahele at 20.

Upon confirmation of a claim, the Land Commission was required to issue a Land Commission Award. Jon J. Chinen, Original Land Titles in Hawaii at 9 (1961).

"Even after receiving a Land Commission Award for a tract of land, the recipient did not acquire a free and clear title. He was still required to pay commutation to the government, in cash or by the surrender of equally valuable lands." Chinen, The Great Mahele at 21. The Minister of Interior issued a "Royal Patent" upon the payment of the commutation. Id. A Royal Patent did not confer title, but it quitclaimed the government's interest in the land. Chinen, The Great Mahele at 13.

The land King Kamehameha III retained for his own personal use in The Great Mahele became known as "Crown Lands" and the lands he retained for "the chiefs and people" became known as "Government Lands." Chinen, The Great Mahele at 26. The lands issued to the chiefs or konohiki were referred to as "Konohiki Lands." Reilly, The Language of Real Estate in Hawaii at 182.

7

"Following the division of the lands into Crown, Government, and Konohiki Lands, from time to time portions of the Government Lands were sold as a means of obtaining revenue to meet the increasing costs of the Government.  Purchasers of these lands were issued documents called 'Grants' or 'Royal Patent Grants.'  These differed from the Royal Patents issued upon Land Commission Awards."  Chinen, The Great Mahele at 28-29.

All lands of the king, the government, and the konohiki were awarded subject to the rights of native tenants.  Pai 'Ohana v. United States, 875 F.Supp. 680, 686 (D. Haw. 1995). In 1850, the enactment of the Kuleana Act empowered the Land Commission to award fee simple title to native tenants for their plots of land or "kuleana."[1]  Id.

"The awarding of these kuleanas to the native tenants completed the mahele, or division, of the lands within the Islands into Crown Lands, Government Lands, Konohiki Lands, and Kuleana Lands, and brought to an end the ancient system of land tenure in the Hawaiian Kingdom."  Chinen, The Great

---

[1] "Kuleana" is a Hawaiian term used to describe the landholding of a native tenant residing or working within a larger parcel of land known as an ahupuaa.  Reilly, The Language of Real Estate in Hawaii at 182.  "Kuleana Lands" are those tracts of land that were awarded to Native Hawaiians residing and working on their kuleana.  See id.

Mahele at 31.

The Land Commission was dissolved on March 31, 1855, and the ability to confirm an award before the Commission was foreclosed.  Pai 'Ohana v. United States, 875 F.Supp. 680, 687, n.17, (D. Haw. 1995).

**Plaintiffs' Chain of Title for the Subject Property**

Lot 32 in the Ukumehame Subdivision located on Maui (hereinafter "Subject Property") is the lot of land that is subject to this action.  (Subject Property Map, attached as Ex. A to Pla.'s CSF, ECF No. 53-2).  The Subject Property consists of a portion of Land Commission Award Number 7779 and bears Tax Map Key designation (2) 4-8-002-104.  (Affidavit of Colleen H. Uahinui ("Uahinui Aff.") at ¶¶ 2, 3, 5.A., ECF No. 55-1).

It is undisputed that on September 22, 1853, the Subject Property, as a part of Land Commission Award Number 7779, was originally awarded to "Kaleleiki" (hereinafter "Konohiki Kaleleiki").[2]  (Land Commission Award Number 7779, Land

_____

[2] The Parties agree that the Subject Property was originally given to "Kaleleiki" who had the title of "Konohiki" because he managed the land.  Konohiki Kaleleiki received a portion of land, including the Subject Property, as part of The Great Mahele and subsequently obtained title to the land with the issuance of Land Commission Award 7779.  See Dorothy B. Barrere, The King's Mahele: The Awardees and Their

Commission Award Volume 7 at p. 4, attached as Ex. B to Pla.'s Concise Statement of Facts ("CSF"), ECF No. 53-3; Def.'s Opp. at p. 6, ECF No. 60).

It is also undisputed that on December 8, 1877, Royal Patent Number 7017 was issued for Land Commission Award 7779 that quitclaimed the government's interest in the land. (Uahinui Aff. at ¶ 5.B, ECF No. 55-1; Amended Affidavit of Colleen H. Uahinui ("Amend. Uahinui Aff.") at ¶ 9, ECF No. 59-1; Royal Patent Number 7017, attached as Ex. C to Pla.'s CSF, ECF No. 53-4; Def.'s Opp. at p. 3, ECF No. 38; Chinen, <u>The Great Mahele</u> at 13).

Plaintiffs submitted a chart that documents the chain of title of the Subject Property from the Land Commission Award Number 7779 through to Plaintiffs. (Pla.'s Chart of Chain of Title, attached as Ex. W-1 to the Declaration of William M. McKeon ("McKeon Decl."), ECF No. 53-25).

Plaintiffs have provided the court records for Probate Proceeding Number 518 from the Second Judicial Circuit Court for the Kingdom of Hawaii. (Probate Records for Probate Proceeding Number 518, The Estate of Kaleleike, from the Second Judicial Circuit for the Kingdom of Hawaii, attached as

---

Lands at p. 190 (1994); <u>See</u> Chinen, <u>Original Land Title in Hawaii</u> at p. 13; Chinen, <u>The Great Mahele</u> at 20.

Ex. D to Pla.'s CSF, ECF No. 53-5).  Probate Proceeding Number

518 was for "the Estate of Kaleleike".[3]  (Id. at p. 1).

Probate Proceeding Number 518 was conducted by courts for the

Kingdom of Hawaii between 1871 and 1874.  (Id. pp. 1-128).

Plaintiffs assert that as a result of Probate Proceeding

Number 518, the Subject Property, as a portion of Land

Commission Award Number 7779 and Royal Patent Number 7017, was

conveyed to the heirs of Konohiki Kaleleiki.  (Id. at p. 100;

Uahinui Aff. at ¶ 5.C.1—7, ECF No. 55-1; Amend. Uahinui Aff.

at ¶¶ 11-17, ECF No. 59-1).

Plaintiffs provided evidence tracing the chain of title

of the Subject Property from the conveyance in 1874 to the

four heirs as determined by the Probate through to West Maui

Investors, LLC in February 2006.  (Uahinui Aff. at ¶¶ 5.C.,

E.—P., ECF No. 55-1; Amend. Uahinui Aff. At ¶¶ 11-17, ECF No.

59-1)[4].

---

[3] The records for Probate Proceeding Number 518 are
handwritten and contain repeated inconsistent spellings of
"Kaleleiki."  For example, the caption on the first page of
the documents refers to "Kaleleiki."  (Probate Proceeding 518
at p. 3, ECF No. 53-5).  The order issued on October 30, 1872,
refers to the deceased as "Kaleleike."  (Id. at p. 22).

[4] Plaintiffs provided the Warranty Deed from KEOKI to
WIDEMANN dated January 25, 1881, attached as Ex. E to Pla.'s
CSF, ECF No. 53-6;
    Warranty Deed from KAMOKUMAIA and KAILAKANOA to WIDEMANN,
dated December 20, 1880, attached as Ex. H to Pla.'s CSF, ECF
No. 53-9;

Plaintiffs filed a Warranty Deed dated January 10, 2008, that conveyed the Subject Property from West Maui Investors, LLC to Plaintiffs.  (Warranty Deed dated January 10, 2008, attached as Ex. V to Pla.'s CSF, ECF No. 53-23).

**Defendants' Claim to Title**

Defendants claim they are descendants of Konohiki Kaleleiki who was awarded Land Commission Number 7779. (Def.'s Opp at ¶¶ 28-32, ECF No. 60).  Defendants appear to argue that they have inherited the property through their

---

Deed from WIDEMANN to OLOWALU COMPANY dated August 19, 1882, attached as Ex. F to Pla.'s CSF, ECF No. 53-7;
Deed from KAPAHUKEA AINOA to OLOWALU COMPANY dated October 20, 1896, attached as Ex. I to Pla.'s CSF, ECF No. 53-10;
Deed from OLOWALU COMPANY to PIONEER MILL COMPANY dated December 31, 1931, attached as Ex. G to Pla.'s CSF, ECF No. 53-8;
Deed from PIONEER MILL COMPANY to DEVON CORP., ONE-FOUR-FIVE NORTH, SUGAR WAY LTD., PACIFIC RIM LAND, INC., HAYNES II, FARRINGTON, dated December 5, 1994, attached as Ex. J to Pla.'s CSF, ECF No. 53-11;
Multiple Deeds from DEVON CORP., ONE-FOUR-FIVE NORTH, SUGAR WAY LTD., PACIFIC RIM LAND, INC., HAYNES II, FARRINGTON to between October 26, 1995 and January 21, 2003, attached as Exs. K, L, M, N, O, P, Q to Pla.'s CSF, ECF Nos. 53-12—18;
Quitclaim Deeds from SUGAR WAY LTD, HAYNES II, FARRINGTON, KEAN, UKUMEHAME QUARRY to U. DEVELOPMENT, INC. Dated December 14, 2005 as amended on February 10, 2006, attached as Exs. R, S to Pla.'s CSF, ECF Nos. 53-19—20;
Quitclaim Deeds from U. DEVELOPMENT, INC. To WEST MAUI INVESTORS, LLC dated January 27, 2006, as amended on February 10, 2006, attached as Exs. T, U to Pla.'s CSF, ECF Nos. 53-21—22.

ancestors.   (Id.)

Defendants dispute the validity of the 1874 decision in Probate Proceeding Number 518 that conveyed the parcel of property at issue here.   (Def.'s Opp. at ¶¶ 2-15, ECF No. 60). Probate Proceeding Number 518 lasted from 1871 until 1874 in the courts of the Kingdom of Hawaii.   Probate Proceeding Number 518 was concerned with the heirs of Konohiki Kaleleiki, the original awardee of Land Commission Award 7779.

The Defendants claim that Probate Proceeding Number 518 was for a person named "Kaleleike" and not for their ancestor "Kaleleiki."   Defendants maintain that the probate proceeding incorrectly attributed land that belonged to their ancestor "Kaleleiki" to an entirely different person named "Kaleleike," but offer no support for the theory.

Defendants' allegations that the land of "Kaleleiki" was incorrectly attributed to a person named "Kaleleike" was never raised in the probate proceeding.   The controversy in the probate proceeding was about who were the rightful, legitimate heirs of the deceased Konohiki Kaleleiki.

The Defendants do not offer any alternate chain of title that would provide a chain of title that leads to them.

## **STANDARD OF REVIEW**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. <u>Celotex</u>, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met by pointing out to the district court that

there is an absence of evidence to support the non-moving party's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at

15

630.  The opposing party cannot rest on mere allegations or denials.  Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994).  When the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.  Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993); see also National Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

## ANALYSIS

As an initial matter, the district court observes that the Defendants Von-Alan and Sarah-Therece Kaleleiki are proceeding pro se.  A pro se litigant's pleadings are construed more liberally than pleadings drafted by counsel. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  Leniency toward the pro se litigant is given when he technically violates a procedural rule but "a pro se litigant is not excused from knowing the most basic pleading requirements."  Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107-08 (9th Cir. 2000); Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986).

Count II:                    Quiet Title

     Section 669-1(a) of the Hawaii Revised Statutes provides a cause of action for quiet title.  The statute states that an "[a]ction may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."  Haw. Rev. Stat. § 669-1(a).

     In an action to quiet title, the burden is on the plaintiff to prove title to the land in dispute.  Makila Land Co., LLC, v. Kapu, 156 P.3d 482, 484 (Haw. App. 2006).  The plaintiff must bring forward prima facie evidence of title.  Alexander & Baldwin, Inc. v. Silva, 248 P.2d 1207, 1214 (Haw. App. 2011).  Plaintiff need not have perfect title, but must prove a substantial interest in the property and title superior to that of defendants.  Id. (citing Maui Land & Pineapple Co., Inc. v. Infiesto, 879 P.2d 507, 513 (Haw. 1994)).

     Plaintiffs seek to quiet title for the Subject Property: Lot 32 in the Ukumehame Subdivision located on the island of Maui.  Plaintiffs assert they purchased the property on January 10, 2008, from West Maui Investors, LLC.  Plaintiffs recorded a warranty deed for the Subject Property bearing Tax Map Key No. (2) 4-8-002:104, with the State of Hawaii Bureau

17

of Conveyances.   (Warranty Deed dated January 10, 2008, Doc.

No. 2008-004218, Tax Map Key No. (2) 4-8-002:104, attached as

Ex. V to Pla.'s CSF, ECF No. 53-23).

The warranty deed states that it conveys a 7.846 acre lot

in the Ukumehame agricultural subdivision from West Maui

Investors, LLC to Plaintiffs.   (Id.)   The lot is described as:

> LOT 32, UKUMEHAME AGRICULTURAL SUBDIVISION, PHASE II
>
> BEING PORTIONS OF GRANT 4973 TO WALTER GIFFARD AND
> ROYAL PATENT 7017, LAND COMMISSION AWARD 7779, APANA
> 4 TO KALELEIKI
>
> SITUATE AT UKUMEHAME, LAHAINA, ISLAND OF MAUI,
> HAWAII
>
> (Id.)[5]

---

[5] The Subject Property is described in the recorded
warranty deed as follows: "Beginning at the north corner of
this parcel of land, being along the east side of Pohaku 'Aeko
Street (Roadway Lot R-2) of Ukumehame Agricultural
Subdivision, Phase II, the coordinates of said point of
beginning referred to Government Survey Triangulation Station
'KILEA' being 4,974.78 feet South of 10,683.21 feet East and
thence running by azimuths measured clockwise from true South:
1.   273°       25'        178.20 feet along Lot 31 of Ukumehame
                           Agricultural Subdivision, Phase II to
                           a 3/4" pipe (fnd);
2.   305°    52' 20"   426.13 feet along the Government Land
                           of Ukumehame;
3.   30°  00'      821.85 feet along Lot 33 of Ukumehame
                           Agricultural Subdivision, Phase II;
4.   93°  25'      140.00 feet along the north side of Paeki'i
                           Place (Roadway Lot R-2) of Ukumehame
                           Agricultural Subdivision, Phase II;
5.   Thence along the intersection of Paeki'i Place (Roadway
     Lot R-2) and Pohaku 'Aeko Street (Roadway Lot R-2), on a
     curve to the right with a radius of 30.00 feet, the chord
     azimuth and distance being 138°   25' 42.43 feet;

A.   **Plaintiffs' Chain of Title**

1.   **1853: Land Commission Award 7779 to Kaleleiki**

The Subject Property consists of land that on September 22, 1853, was originally awarded to Konohiki Kaleleiki in Land Commission Award Number 7779.  (Land Commission Award Number 7779, Land Commission Award Volume 7 at p. 4, attached as Ex. B to Pla.'s CSF, ECF No. 53-3).

Land Commission Award Number 7779 comprised Apana 1 through 4, located in the Ahupuaa of Ukumehame on the Island of Maui.  (Uahinui Aff. at ¶ 5.A, ECF No. 55-1; Amend. Uahinui Aff. at ¶ 8, ECF No. 59-1).

The Parties agree that Konohiki Kaleleiki died intestate and did not convey any portion of land he was awarded in Land Commission Award Number 7779 before he died.  (Uahinui Aff. at ¶ 5.C, ECF No. 55-1; Def.'s Opp. at ¶ 10, ECF No. 60).

2.   **1871: Probate Proceeding Number 518**

The evidence submitted by the Plaintiffs states that in November 1870, Konohiki Kaleleiki, the original awardee of

---

6.   183°     25'       933.64 feet along the east side of
                        Pohaku 'Aeko Street (Roadway Lot R-2),
                        of Ukumehame Agricultural Subdivision,
                        Phase II to the point of beginning and
                        containing an area of 7.846 acres.

Land Commission Award 7779, died in Kaunakakai, Molokai. (Uahinui Aff. at ¶ 5.C, ECF No. 55-1).

Following the death of Konohiki Kaleleiki, in August 1871, Probate Proceeding Number 518 was opened in the District Court of the Circuit Courts of the Kingdom of Hawaii to determine the heirs of Konohiki Kaleleiki's estate, including the heirs to Land Commission Award 7779.[6] (Uahinui Aff. at ¶ 5.C, ECF No. 55-1; Records of Probate Number 518, The Estate of Kaleleike, from the Second Circuit Court of the State of Hawaii, attached as Ex. D to Pla.'s CSF, ECF No. 53-5).

---

[6] The title of Probate Proceeding Number 518 refers to the Estate of "Kaleleike". (See Certificate from the Second Circuit Court for the Judiciary of the State of Hawaii stating that the documents are for "Probate Case Number 518, The Estate of Kaleleike", at p. 1, attached as Ex. D to Pla.'s CSF, ECF No. 53-5).

The records for Probate Proceeding Number 518 are handwritten and contain inconsistent spellings of "Kaleleiki." The caption on the first page of the documents refers to "Kaleleiki". (Probate Proceeding 518 at p. 3, ECF No. 53-5).

The order issued on October 30, 1872, refers to the deceased as "Kaleleike". (Probate Proceeding 518 at p. 22, ECF No. 53-5).

The caption on the document dated June 19, 1873, refers to "Kaleleiki." (Probate Proceeding 518 at p. 56, ECF No. 53-5).

The document in the proceeding that lists the disposition of property, including the 2 apana in Ukumehame that include the Subject Property, dated October 9, 1871, refers to "Kaleleiki." (Probate Proceeding 518 at pp. 106-07, ECF No. 53-5).

It is unclear if the caption on the final order in Probate Proceeding Number 518, dated September 28, 1874, ends in an "i" or an "e" in the deceased's name. (Probate Proceeding 518 at p. 110, ECF No. 53-5).

The nature of the controversy in Probate Proceeding Number 518 was who were the rightful, legitimate heirs to Konohiki Kaleleiki.  (Amended Uahinui Aff. ¶¶ 10-17, ECF No. 59-1).  Probate Proceeding Number 518 contested by a number of individuals with 26 witnesses testifying at trial.  (Records of Probate Number 518, attached as Ex. D to Pla.'s CSF, ECF No. 53-5; Uahinui Aff. at ¶ 5.C, ECF No. 55-1).  Probate proceedings lasted over three years and the judgment was modified based on the death of one of the heirs.  (Uahinui Aff. at ¶ 5.C, ECF No. 55-1; Amended Uahinui Aff. at ¶¶ 16, ECF No. 59-1).

On September 28, 1874, the final report for Probate Proceeding Number 518 was entered with all of the land that formed part of the Kaleleiki estate divided as follows:

1/2 of the estate to Keoki;

1/6 of the estate to Kamokumaia;

1/6 of the estate to Kailakano;

1/6 of the estate to Kapahukea.

(Uahinui Aff. at ¶ 5.C.7, ECF No. 55-1; Ex. D at p. 110; Amended Uahinui Aff. at ¶ 17, ECF No. 59-1).

**3.    1881-1931: Conveyances from the Probate Determined              Heirs through to Pioneer Mill Company**

Plaintiffs provided evidence that in 1881 and 1882, three of Konohiki Kaleleiki's heirs, Keoki, Kamokumia, and Kailakano, conveyed their combined 5/6 interest in Land Commission Award 7779 to Hermann A. Widemann.  (Warranty Deed from KEOKI to WIDEMANN dated January 25, 1881, attached as Ex. E to Pla.'s CSF, ECF No. 53-6;  Warranty Deed from KAMOKUMAIA and KAILAKANOA to WIDEMANN, dated December 20, 1880, attached as Ex. H to Pla.'s CSF, ECF No. 53-9).

Plaintiffs submitted documents to demonstrate that on August 19, 1882, Olowalu Company obtained the 5/6 interest in Land Commission Award from Widemann.  (Deed from WIDEMANN to OLOWALU COMPANY dated August 19, 1882, attached as Ex. F to Pla.'s CSF, ECF No. 53-7).

Plaintiffs provided evidence that Olowalu Company received the remaining 1/6 interest in Land Commission Award 7779 on October 30, 1896, when Kapahukea conveyed her 1/6 interest to Olowalu Company.  (Deed from KAPAHUKEA AINOA to OLOWALU COMPANY dated October 20, 1896, attached as Ex. I to Pla.'s CSF, ECF No. 53-10).

Plaintiffs submitted records that on December 31, 1931, Olowalu Company conveyed its entire interest in the land subject to Land Commission Award 7779 to Pioneer Mill Company, Limited.  (Deed from OLOWALU COMPANY to PIONEER MILL COMPANY

22

dated December 31, 1931, attached as Ex. G to Pla.'s CSF, ECF No. 53-8).

**4.    1931-2006: Conveyances from Pioneer Mill Company through to West Maui Investors, LLC.**

Plaintiffs put forth evidence that on December 5, 1994, Pioneer Mill Company, Limited conveyed interest in land, including the Subject Property in this case, to a number of entities who in turn obtained the entitlements and approvals necessary to subdivide the land into the Ukumehame Agricultural Subdivision and each conveyed their interest in the land, to U. Development, Inc. on December 14, 2005. (Uahinui Aff. ¶5.H-N, Deed from PIONEER MILL COMPANY to DEVON CORP., ONE-FOUR-FIVE NORTH, SUGAR WAY LTD., PACIFIC RIM LAND, INC., HAYNES II, FARRINGTON, dated December 5, 1994, attached as Ex. J to Pla.'s CSF, ECF No. 53-11; Deeds on October 26, 1995 and January 21, 2003, attached as Exs. K, L, M, N, O, P, Q to Pla.'s CSF, ECF Nos. 53-12—18; Quitclaim Deeds conveying land including the Subject Property to U. DEVELOPMENT, INC. dated December 14, 2005 and amended on February 10, 2006, attached as Exs. R, S to Pla.'s CSF, ECF Nos. 53-19—20).

Plaintiffs submitted a deed as evidence that on January 27, 2006, U. Development, Inc. conveyed its interest in the

land, including the Subject Property, to West Maui Investors, LLC. (Quitclaim Deeds from U. DEVELOPMENT, INC. To WEST MAUI INVESTORS, LLC dated January 27, 2006 and amended on February 10, 2006, attached as Exs. T, U to Pla.'s CSF, ECF Nos. 53-21—22).

### 5.    2008: Conveyance from West Maui Investors, LLC to        Plaintiffs

On January 10, 2008, West Maui Investors, LLC conveyed the Subject Property to Plaintiffs by warranty deed. (Warranty Deed dated January 10, 2008, Doc. No. 2008-004218, Tax Map Key No. (2) 4-8-002:104, attached as Ex. V to Pla.'s CSF, ECF No. 53-23).

Plaintiffs have submitted prima facie evidence of title to the Subject Property by tracing ownership forward from the initial land grant in 1853 through to their 2008 warranty deed. Alexander & Baldwin, Inc., 248 P.3d at 1213; Maui Land & Pineapple, 879 P.2d at 511-12.

### B.   Defendants' Challenges to Plaintiffs' Claim to Title

To rebut the Plaintiffs' showing of a substantial interest in the subject property, the Defendant must prove that their title is superior to Plaintiffs'. Algal Partners, L.P. v. Santos, Civ. No. 13-00562 LEK-BMK, 2014 WL 1653084, *5

(D. Haw. Apr. 23, 2014); see Kaupulehu Land LLC v. Heirs and Assigns of Pahukula, 2013 WL 6507551, *3-5 (Haw. App. Dec. 11, 2013).

A defendant need not prove that he has perfect title to prevent plaintiff from quieting title at the summary judgment stage, but must raise a genuine issue of material fact as to which party has superior title.  Alexander & Baldwin, Inc. v. Silva, 248 P.3d 1207, 1213 (Haw. App. 2011).

To defeat the Plaintiffs' motion, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exits." Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  The opposing party must do more than simply assert that they dispute the material facts.  Orr v. Bank of Am., 285 F.3d 764, 783 (9th Cir. 2002).

### 1.    Defendants' Argument Based on Inconsistent Spellings in the Records for Probate Proceeding Number 518

Defendants dispute the validity of Probate Proceeding Number 518, which occurred more than 140 years ago, based on inconsistency in the spelling of "Kaleleiki" in the records. (Def.'s Opp. at ¶¶ 2-15, ECF No. 60).  The Defendants claim

that Probate Proceeding Number 518 was not for their ancestor "Kaleleiki," who was the original awardee of Land Commission Award 7779.  Defendants assert an entirely different person named "Kaleleike" was subject to Probate Proceeding Number 518 that lasted from 1871 until 1874 in the courts of the Kingdom of Hawaii.  Defendants argue that Probate Proceeding Number 518 incorrectly attributed land that was owned by "Kaleleiki" to a person named "Kaleleike" but offer no evidence for their claim.

The more than 140 year-old records from the probate proceeding are handwritten and contain spelling inconsistencies referring to the deceased as either "Kaleleike" or "Kaleleiki" at various points in the proceedings.  (Records of Probate Number 518, The Estate of Kaleleike, from the Second Circuit Court of the State of Hawaii, attached as Ex. D to Pla.'s CSF, ECF No. 53-5; Pla.'s Reply at p. 5, ECF No. 62; Uahinui Reply Aff. at ¶¶ 3-4, ECF No. 62-1; "Kaleleiki" used in the captions for Probate Proceeding 518 at p. 3, p. 56, ECF No. 53-5; "Kaleleike" used in the title of the proceeding and in the order dated October 30, 1872 in Probate Proceeding 518 at pp. 1, 22, ECF No. 53-5).

The Defendants claim that Probate Proceeding 518 did not

26

convey the Subject Property at issue here.  (Def.'s Opp. at ¶ 2, ECF No. 60).  Contrary to Defendants' claim, the Plaintiffs' evidence and the records from Probate Proceeding 518 indicate that the Subject Property was a portion of the Land Commission Award 7779 that was awarded to the judicially determined heirs in the probate proceeding.  (Records of Probate Number 518, The Estate of Kaleleike, from the Second Circuit Court of the State of Hawaii, at p. 100 listing "2 Apana Ukumehame, Lahaina" attached as Ex. D to Pla.'s CSF, ECF No. 53-5; Pla.'s Reply at pp. 5-9, ECF No. 62, Affidavit of Colleen H. Uahniui attached to Reply ("Uahinui Reply Aff.") at ¶¶ 5-6, ECF No. 62-1; see Dorothy B. Barrere, <u>The King's</u> <u>Mahele: The Awardees and Their Lands</u> at p. 190 (1994) (finding that Land Commission Award 7779 was subject to Probate Proceeding Number 518)).

Page 100 of the probate records for Probate Number 518 consists of an inventory and accounting of real property that formed the estate of "Kaleleiki".  (Records of Probate Number 518, at p. 100, attached as Ex. D to Pla.'s CSF, ECF No. 53-5).

It is unclear in the final handwritten order in Probate Proceeding Number 518, dated September 28, 1874, if the caption referring to "Kaleleiki" ends in an "i" or an "e" in

27

the deceased's name.   (Probate Proceeding 518 at p. 110, ECF
No. 53-5)).   The inconsistent spellings do not invalidate the
findings in the probate proceeding.   Lance and Linda Neibauer
Joint Trust v. Kurgan, 2014 WL 7251526, *3 (D. Or. Dec. 16,
2014) (finding that a scrivener's error does not create a
genuine issue of fact); Spartalian v. Citibank, N.A., 2013 WL
5437347, *4 (D. Nev. Sept. 27, 2013) (finding that misspelling
of the author of the notice letter did not raise a issue of
fact as to the legal effect of the letter); Daub v. Eagle Test
Systems, Inc., 2006 WL 3782877, *3 n.4 (N.D. Cal. Dec, 21,
2006).

There is no support for Defendant's argument that Probate
Proceeding Number 518 was for a person other than Konohiki
Kaleleiki.   The Defendants agree that Konohiki Kaleleiki
received the Subject Property in The Great Mahele.   There is
no evidence that another person named "Kaleleike" received any
property in The Great Mahele.   See Barrere, The King's Mahele:
The Awardees and Their Lands at p. 190 (finding that Land
Commission Award 7779 for "Kaleleiki" was subject to Probate
Proceeding Number 518).

### 2.   Defendants Do Not Provide Any Alternate Chain of Title

On September 28, 1874, the final report for Probate

Proceeding Number 518 awarded the estate of Kaleleiki to his heirs which were determined to be Keoki, Kamokumaia, Kailakano, and Kapahukea. (Uahinui Aff. at ¶ 5.C.7, ECF No. 55-1; Ex. D at p. 113; Amended Uahinui Aff. at ¶ 17, ECF No. 59-1).

A federal court should generally give preclusive effect to a foreign court's finding as a matter of comity. <u>Click Entertainment, Inc. v. JYP Entertainment Co., Ltd.</u>, 2012 WL 1980788, *6 (D. Haw. May 31, 2012) (citing <u>United States v. Kashamu</u>, 656 F.3d 679, 683 (7th Cir. 2011); <u>Paramedics Electromedicina Comercial, Ltda v. GE Medical Sys. Info. Techs., Inc.</u>, 369 F.3d 645, 654 (2d Cir. 2004)).

The Court will not relitigate the 1874 decision of the Kingdom of Hawaii Courts as to the heirs of Konohiki Kaleleiki. The courts of the Kingdom of Hawaii in Probate Proceeding 518 made judicial findings as to the heirs entitled to inherit the Subject Property and Defendants have not demonstrated that the decision is not entitled to preclusive effect in this Court. <u>Kashamu</u>, 656 F.3d at 683; <u>Huelo Hui, LP v. Kiili</u>, 301 P.3d 1267, *2-4 (Haw. App. 2013) (upholding a probate proceeding conducted by the Kingdom of Hawaii courts).

The Defendants do not offer any alternate chain of title to Konohiki Kaleleiki, the original awardee of the Subject

Property.   Unlike Plaintiffs, Defendants have not provided any evidence tracing ownership forward from the initial land grant through to any of their ancestors.   Alexander & Baldwin, Inc., 248 P.3d at 1213.

Defendants do not claim any relation to the judicially determined heirs of Kaleleiki: Keoki, Kamokumaia, Kailakano, and Kapahukea.   (Affidavit of Von-Alan Hinano Kaleleiki, attached as Ex. T to Def.'s Opp., ECF No. 60-20; Affidavit of Defendant Sarah-Therese K. Kaleleiki attached as Ex. U to Def.'s Opp. ECF No. 60-21).

Defendants have not presented any evidence that they were conveyed an interest in the Subject Property.   Makila Land Co., LLC v. Dizon, 2013 WL 1091721, *3 (Haw. App. March 15, 2013).

Defendants have not provided any evidence to demonstrate that they are heirs to Konohiki Kaleleiki or any of the judicially determined heirs to his property in Probate Proceeding Number 518.

### 3.   Defendants' Additional Claims

Defendants make a number of arguments regarding their rights as provided by the Kingdom of Hawaii, rather than the laws of the State of Hawaii.   (Def.'s Opp. at p. 2-6, ECF No.

60).

Both Hawaii state courts and federal courts have found that the Kingdom of Hawaii is not now an existing sovereign state.  State v. French, 883 P.2d 644, 650 (Haw. App. 1994); United States v. Lorenzo, 995 F.2d 1448, 1456 (9th Cir. 1993).

The arguments regarding Defendants' current rights "provided for by Laws of the Hawaiian Kingdom" are foreclosed. Id.  The Hawaii Intermediate Court of Appeals has specifically recognized that the laws of the State of Hawaii apply to Native Hawaiians.  Nishitani v. Baker, 921 P.2d 1182, 1190 (Haw. App. 1996) ("We reject the first concept—that Defendants, as 'birth descendants of Native Hawaiians,' are not subject to the government and court of the State of Hawaii").

Defendants' remaining arguments are conclusory statements that the Plaintiffs' "title is defective" or that the transactions were "fraudulent."  Defendants' uncorroborated allegations and "self-serving testimony" do not create a genuine issue of material fact.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Defendants have not established that they have title to the Subject Property that is superior to Plaintiffs' title.

31

In earlier filings, Defendants have submitted a quitclaim deed that was recorded by their father Samuel Houpo Kaleleiki, Jr. on February 4, 2014, in the State of Hawaii Bureau of Conveyances as Document No. A-51480946.  (Quitclaim Deed, Doc. No. A-51480946, Tax Map Key Nos. (2) 4-8-002:104, (2) 4-8-002:118 &, 90, attached as Ex. WM-4 to the McKeon Decl., ECF No. 30-7).  There is no evidence that Defendant Samuel Kaleleiki, Jr. possessed any interest in the Subject Property on February 4, 2014 that would have been conveyed to Defendants Von-Alan Kaleleiki or Sarah-Therece Kaleleiki by the quitclaim deed.  Hustace v. Kapuni, 718 P.2d 1109, 1112 (Haw. App. 1986).

Plaintiffs' title is superior to the claims to title by Defendants.  Maui Land & Pineapple Co., 879 P.2d at 513.

Plaintiffs' Partial Motion for Summary Judgment as to Count II for quiet title is **GRANTED**.

**Count IV:**          **Ejectment**

Under Hawaii law, a claim for ejectment requires the plaintiff to demonstrate that he has ownership and title to the property at issue.  Kondaur Capital Corp. v. Matsuyoshi, 339 P.3d 534, *1, (Haw. App. Nov. 19, 2014) (citing State by Price v. Magoon, 858 P.2d 712, 718-19 (Haw. 1993)).  A

32

plaintiff must recover upon the strength of his own title and not upon any weakness in the defendant's title.  <u>Fong Hing v. O. Yamaoka</u>, 31 Haw. 436, 1930 WL 2890, at *1 (Haw. 1930).

Plaintiffs have established that they own and possess title to Subject Property pursuant to the warranty deed recorded on January 10, 2008.  (Warranty Deed, Doc. No. 2008-004218, Tax Map Key No. (2) 4-8-002:104, attached as Ex. V to the Pla.'s CSF, ECF No. 53-23).

There are no genuine issues of material fact as to the validity of the Plaintiffs' title.  Defendants' conclusory arguments that Plaintiffs' title is defective are not supported by any evidence and do not raise a genuine issue of material fact for trial.  <u>Kondaur Capital Corp.</u>, 339 P.3d at *2.

Plaintiffs' Partial Motion for Summary Judgment as to Count IV for ejectment is **GRANTED** consistent with the finding of quiet title in favor of the Plaintiffs.

Plaintiffs shall provide the Court with a Proposed Order as to their request for ejectment.

**Count V:        Request for Remedies and Injunctive Relief**

Plaintiffs move for summary judgment as to Count V in their Complaint.  Count V in Plaintiffs' Complaint is labeled

Preliminary Injunction/Permanent Injunction.  Plaintiffs'
Motion as to Count V is a request for remedies and not summary
judgment as to a cause of action.

A court may grant injunctive relief at the summary
judgment stage when there are no genuine issues of material
fact.  S.E.C. v. Murphy, 626 F.2d 633, 655 (9th Cir. 1980);
Moore's Fed. Practice 3d § 65.21[4], [6].

Plaintiffs assert in their Motion for Partial Summary
Judgment that if they prevail on summary judgment for their
quiet title and ejectment claims, they are entitled to an
injunction to prevent Defendants from claiming title to their
property and from entering their property.  (Pla.'s Motion for
Partial Summary Judgment dated September 10, 2015, at p. 13,
ECF No. 52-1).

A preliminary injunction is available to preserve the
relative positions of the parties until a trial on the merits
can be held.  Univ. of Tex. v. Camenisch, 451 U.S. 390, 395
(1981).  A preliminary injunction dissolves automatically when
final judgment is entered.  U.S. Philips Corp. v. KBC Bank
N.V., 590 F.3d 1091, 1093-95 (9th Cir. 2010).  A preliminary
injunction is not procedurally appropriate for Plaintiffs as
they have prevailed on summary judgment as to their quiet
title and ejectment claims.  Golden Gate Hotel v. City & Cnty.

of San Francisco, 836 F.Supp. 707, 709 (N.D. Cal. 1993).

The Court construes Plaintiffs' request for summary judgment as to Count V in their Complaint as seeking a permanent injunction.  Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987).

### A.    Permanent Injunction

Pursuant to the Erie doctrine, federal courts exercising diversity jurisdiction in an action based on state law apply the same rules that state courts would apply to all substantive issues but apply federal law to procedural issues. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80 (1938).

Federal courts apply the federal standard to evaluate the merits of a request for a permanent injunction unless the state law standard provides for a different result.  Guaranty Trust Co. of New York v. York, 326 U.S. 99, 109 (1945); Sims Snowboards, Inc. v. Kelly, 863 F.2d 643, 646-47 (9th Cir. 1988); Compass Bank v. Hartley, 430 F.Supp.2d 973, 978 n.9 (D. Ariz. 2006).

Under federal procedural law, a plaintiff seeking a permanent injunction must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate

for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy at equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).

The Hawaii state law standard for permanent injunctive relief is similar to the federal standard and evaluates whether: (1) the plaintiff has prevailed on the merits of the claim; (2) the balance of irreparable damage favors the issuance of a permanent injunction; and (3) the public interest supports granting such an injunction.  Pofolk Aviation Hawaii, Inc. v. Dept. of Transp. for State, 339 P.3d 1056, 1062 (Haw. App. 2014).

Here, the federal standard applies because application of the state law standard would not change the result.  See Kane v. Chobani, Inc., 2013 WL 3776172, *3 (N.D. Cal. July 15, 2013).

It is unclear from Plaintiffs' Motion the scope of the permanent injunction they seek.  Plaintiffs do not request specific injunctive relief in their current Motion for Partial Summary Judgment.  (Pla.'s Motion for Partial Summary Judgment filed on September 10, 2015, at p. 13, ECF No. 52-1).  The Court is not required to comb through the record to find the

basis for Plaintiffs' claim.  <u>Forsberg v. Pac. Northwest Bell Telephone Co.</u>, 840 F.2d 1409, 1418 (9th Cir. 1988).  It is the party's responsibility to bring the issue to the attention of the Court in the motion before it.  <u>Id.</u>

Plaintiffs stated in their previous Motion for Partial Summary Judgment that they seek injunctive relief to prevent Defendants from interfering with their "Property and Common Elements."  (Pla.'s Partial Motion for Summary Judgment filed on January 29, 2015 at pp. 21-24, ECF No. 29-3).

Plaintiffs have not established the parameters of the injunction they seek.

Plaintiffs may submit a Proposed Order that sets forth the specific relief they are requesting consistent with the Court's finding of quiet title in favor of the Plaintiffs. Plaintiffs shall provide a Memorandum setting forth the legal basis for the requested relief.

**B.   Expungement of Nonconsenual Lien Pursuant to Haw. Rev. Stat. § 507D-7(a)**

As an additional remedy, Plaintiffs request that the Court expunge the quitclaim deed filed by Samuel Kaleleiki, Jr. with the State of Hawaii Bureau of Conveyances on February 4, 2014.  (Quitclaim Deed, Doc. No. A-51480946, Tax Map Key Nos. (2) 4-8-002:104, (2) 4-8-002:118 &, 90, attached as Ex.

WM-4 to the McKeon Decl., ECF No. 30-7).

Any party with an interest in real property, which is subject to an invalid instrument that has been filed with the Hawaii State Bureau of Conveyances, may file a petition to contest the validity of the lien.  Haw. Rev. Stat. § 507D-4(a).  A court shall expunge the instrument that has been recorded with the Hawaii State Bureau of Conveyances if the instrument is invalid and creates an encumbrance on or affects title or ownership of property.  Haw. Rev. Stat. § 507D-7(a).

The Hawaii State Legislature explained in Haw. Rev. Stat. § 507D-1 that the statute to expunge invalid nonconsensual common law liens is necessary because the bureau of conveyances does not have the discretionary authority to refuse to record instruments so long as those instruments comply with certain minimal format requirements.

Plaintiffs claim that the quitclaim deed filed by Samuel Kaleleiki, Jr. is a nonconsensual common law lien that should be expunged pursuant to Haw. Rev. Stat. § 507D-7(a).

The Court agrees that quitclaim deed, Doc. No. A-51480946 filed with the Hawaii State Bureau of Conveyances on February 4, 2014 is an invalid nonconsensual law lien against the Subject Property.

Plaintiffs have quieted title to the Subject Property and

38

Defendants have not demonstrated that they have any interest in the Subject Property.  See Olson, 2012 WL 39140, *6 (granting the plaintiff's request to expunge deeds filed by the defendants against his property pursuant to Haw. Rev. Stat. § 507D-7 because the defendants' arguments that they had inherited title to the property had been rejected).

Plaintiffs' Partial Motion for Summary Judgment to expunge the quitclaim deed, Doc. No. A-51480946 recorded on February 4, 2014, with the Hawaii State Bureau of Conveyances, pursuant to Haw. Rev. Stat. § 507D-7(a) is **GRANTED**.


## CONCLUSION

Plaintiffs' Motion for Partial Summary Judgment (ECF No. 52) is **GRANTED, IN PART.**

**COUNT II**:

Plaintiffs' Motion for Partial Summary Judgment (ECF No. 52) as to Count II for quiet title is **GRANTED**.

Plaintiffs have demonstrated superior title to the property described in Warranty Deed, Doc. No. 2008-004218, Tax Map Key No. (2) 4-8-002:104, attached as Ex. V to Pla.'s CSF, ECF No. 53-23, described as:

LOT 32, UKUMEHAME AGRICULTURAL SUBDIVISION, PHASE II

BEING PORTIONS OF GRANT 4973 TO WALTER GIFFARD AND ROYAL PATENT 7017, LAND COMMISSION AWARD 7779, APANA 4 TO KALELEIKI

SITUATED AT UKUMEHAME, LAHAINA, ISLAND OF MAUI, HAWAII.

**COUNT IV**:

Plaintiffs' Motion for Partial Summary Judgment (ECF No. 52) as to Count IV for ejectment is **GRANTED** consistent with the finding of quiet title in favor of the Plaintiffs.

Plaintiffs shall provide the Court with a Proposed Order as to their request for ejectment.

**COUNT V**:

Plaintiffs have not established the parameters of the permanent injunction they seek.

Plaintiffs may submit a Proposed Order that sets forth the specific relief they are requesting consistent with the Court's finding of quiet title in favor of the Plaintiffs. Plaintiffs shall provide a memorandum setting forth the legal basis for the requested relief.

**EXPUNGEMENT OF DEED DOC. No. A-51480946**:

Plaintiffs' Motion for Partial Summary Judgment to expunge the quitclaim deed, Doc. No. A-51480946 recorded on February 4, 2014, with the Hawaii State Bureau of Conveyances, pursuant to Haw. Rev. Stat. § 507D-7(a) is **GRANTED**.

//
//
//
//
//
//
//
//
//
//

40

The Court **ORDERS** that Quitclaim Deed, Doc. No. A-51480946, recorded on February 4, 2014, with the State of Hawaii Bureau of Conveyances, be expunged as an invalid lien pursuant to Haw. Rev. Stat. § 507D-7(a).


IT IS SO ORDERED.

DATED:     Honolulu, Hawaii, December 21, 2015.




                        /s/ Helen Gillmor

                        Helen Gillmor
                        United States District Judge


Mehrdad Shayefar; Gina Shayefar v. Samuel Houpo Kaleleiki, Jr.; Von-Alan Hinano Kaleleiki; Sarah-Therece K. Kaleleiki; John Does 1-50; Jane Does 1-50; Doe Corporations 1-50; Doe Partnerships 1-50; Doe Entities 1-50; Doe Governmental Units 1-50; Civ. No. 14-00322 HG-KSC; **ORDER GRANTING, IN PART, PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 52)**